**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

KEISHA BOYD, CHANDAR MCDANIELS, AME'CHERIE CANNON,

        Plaintiffs,

v.

NEW JERSEY DEPARTMENT OF CORRECTIONS, ET AL.,

        Defendants.

Civ. No. 12-6612 (DRD)

**O P I N I O N**

*Appearances by:*

LURETHA M. STRIBLING, ESQ.
133 Westfield Avenue, Suite 3
Clark, New Jersey 07066

    *Attorney for Plaintiffs*

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
by:  Ryan C. Atkinson, Esq.
by:  Jacqueline Augustine, Esq.
R.J. Hughes Justice Complex
25 Market Street
P.O. BOX 112
Trenton, New Jersey 08625

    *Attorneys for Defendants New Jersey Department of Corrections, Gary Lanigan, Paul K. Lagana, Mitchell A. Douglas, Edwin Rodriguez, Darryl A. Morgan, Darryl Coburn, and Andre Graham*

**DEBEVOISE, Senior District Judge**

This matter arises out of a slew of incoherent allegations of widespread discrimination and general misconduct against African American female corrections officers working at Northern State Prison ("NSP").  On September 10, 2012 Plaintiffs Keisha Boyd, Chandar McDaniels, and Ame'Cherie Cannon filed a Complaint, in New Jersey Superior Court, against Defendants New Jersey Department of Corrections ("NJDOCS"), Gary Lanigan, Paul Lagana, Darron Daye, Marvin Blevins, Gregory Paul, Edwin Rodriguez, Darryl Morgan, Darryl Coburn, Asmar Graham, and Mitchell Douglas.  The Complaint sets forth counts of sexual harassment, gender discrimination, racial discrimination, and discrimination based on military status under the New Jersey Law Against Discrimination ("NJLAD") N.J.S.A. 10:5-1 et seq.; violations of the Lily Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(3)(A), Plaintiffs' Local 105 Union Contract, NJDOCS's Corrections Reporting Policy, Domestic Violence Policy, an unspecified policy mandating segregation of employee health and personnel records, and unspecified privacy laws; and claims for exposure to a hazardous environment and retaliation under the Conscientious Employee Protection Act ("CEPA") N.J.S.A. 34:19-1 et seq.  The Complaint seeks compensatory, consequential, and punitive damages from all Defendants on all claims, as well as attorney's fees and costs.

On October 19, 2012, Defendants removed the Complaint to this Court pursuant to 28 § U.S.C. 1441.  Defendants now move to sever the Complaint and require each Plaintiff to file a more definite statement of her claims.  Plaintiffs move to remand all of their claims to New Jersey Superior Court, except that under the Fair Pay Act.

For the reasons set forth below, Defendants' Motion to Sever and require Plaintiffs to individually file more definite statements of their claims is DENIED; Plaintiffs' Motion to

2

Remand is DENIED; and Plaintiffs' Complaint is dismissed without prejudice and with leave to amend.

## I.  BACKGROUND

Plaintiffs are employed by NJDOCS as Senior Corrections Officers at Northern State Prison ("NSP").  Their Complaint sets forth a variety of allegations so disjointed that the Court is unable to synthesize them into a coherent background section.  It is instead forced to recite Plaintiffs' allegations on a claim-by-claim basis.

**A.        Plaintiffs' Claim for Sexual Harassment under the NJLAD**

Plaintiffs allege that Lt. Daye, who, in March 2011, worked at the Shift Commander in Center Control with Plaintiffs, "made sexually suggestive statements and sexual advances at Boyd."  (Compl. ¶ 36.)  He also "started a rumor among the prison staff that he and Boyd were in the park and were caught by law enforcement in a compromising position."  (Id. ¶ 39.)

Plaintiffs further allege that Lt. Daye played "sexually suggestive music" in the Center Control and "told all within earshot that the song 'Doing it in the Park' was his theme song." (Compl. ¶ 38.)  Lt. Daye also "referred to Boyd as a stupid bitch within earshot of" Officers McDaniels and Cannon on a number of occasions (Id. ¶ 43), and commented that Officer Cannon "was not too bright."  (Id.)

Somehow, Lt. Daye's delightful behavior led Officer Boyd to begin dating him, who, as is turns out, was simultaneously in a relationship with another corrections officer, Officer Pitman.  Upon discovering this relationship, Officer Boyd ended her romantic relationship with Lt. Daye and spoke with Officer Pittman.  Apparently, this angered Lt. Daye, who proceeded to tell Officer Boyd that "she had better repair his relationship with Pittman."  (Id. ¶ 45.)  Lt. Daye also sent Officer Boyd text messages stating that "she had better stay out of his way" or risk

being hurt, and that he would kill an "associate of her[']s and would do the same thing to her." (Id.)

Consequently, Officer Boyd initiated a lawsuit against Lt. Daye in Domestic Violence Court and Newark Municipal Court. "In Municipal Court there was a finding that Daye had harmed Boyd." (Id. ¶ 46.) Plaintiffs also filed complaints with NJDOCS's Equal Employment Department ("EED"). According to their Complaint, the EED failed to investigate Officer Boyd's and McDaniels's complaints, but issued a finding of discriminatory conduct against Lt. Daye based on Officer Cannon's Complaint. Plaintiffs allege that, despite these findings, NJDOCS failed to discipline Lt. Daye in any manner. They also allege that they were subject to further unspecified episodes of sexual harassment by unspecified individuals.

**B.      Plaintiffs' Claim for Gender Discrimination under the NJLAD**

Plaintiffs allege that they are penalized by Adm. Lagana, Lt. Morgan, and Major Blevins for arriving to work late while male corrections officers are not. They note that Lt. Rodriguez fails to discipline male officers who work under him that report to work late. They note no specific examples.

Plaintiffs also allege that they are required to work overtime while male officers are not. Plaintiffs point to an episode in May 2012 where Officer Cannon was required to work overtime instead of male corrections officers that were listed ahead of her on the mandatory overtime list. When she refused, stating that she felt ill, she was disciplined by Sgt. Coburn.

Plaintiffs allege that female corrections officers were provided with inferior shifts. For example, in June and July 2011, Officer Boyd submitted a request to one or more unspecified individuals to work the day shift instead of the evening shift. Her request was denied, while

similar requests from other male corrections officers'—who had less experience and submitted their requests after she did—were granted. She was instead transferred to the night shift.

Other requests were apparently denied, too. Plaintiffs point to an episode, in March 2012, when Officer Cannon had just returned from disability leave with a doctor's note requesting that she only do light work. This request was denied by one or more unspecified individuals, while a similar request by a male correction officer, Officer Natale, was granted.

Plaintiffs allege that Officer Boyd was inappropriately made to witness strip searches of male inmates in violation of prison policy. When she complained about this, Sgt. Stone made unspecified discriminatory comments. Sgt. Stone has on other occasions told Officer Boyd that female corrections officers complain too much and should only work at facilities that house female prisoners.

Finally, Plaintiffs point to an episode that occurred on May 2, 2012, where Lt. Morgan told Officers McDaniels and Cannon that they were "referred to as The Haters." (Compl. ¶ 53.) Plaintiffs suggest that Lt. Morgan encouraged other corrections officers to use that term. In addition, Officer McDaniels has been labeled by unspecified individuals as a member of the Bitter Bitch Crew.

C.    **Allegations of Racial Discrimination under the NJLAD**

Plaintiffs contend that white and Latino corrections officers are treated better than African American corrections officers. Plaintiffs recite their aforementioned allegations that Officer Cannon was required to work overtime even though other male officers were ahead of her on the mandatory overtime list. Apparently those officers happened to be Latino.

Plaintiffs then set forth the following examples of unequal treatment: (1) Latina officers were offered training opportunities that were never offered to Plaintiffs, even on request; (2)

Officer Boyd complained to Sgt. Stone that another corrections officer (who was Latina) had covered up the windows to inmates' cells—a violation of prison policy—but she was never disciplined for doing so; (3) Officers McDaniels and Boyd wrote up unspecified reports of workplace violations that were never addressed, while such reports were addressed when submitted by a female Latina corrections officer; (4) Latino male corrections officers freely converse in Spanish in violation of work place policy to only communicate in English; and (5) Lt. Rodriguez chose a Latina corrections officer to work under him in Center Control instead of Officer Boyd, even though she was more qualified for the position.

### D. Plaintiffs' Claim for Violation of the Lilly Ledbetter Act and Local 105 Union Contract

Pursuant to their Local 105 Union Contract, corrections officers at NSP are required to work mandatory overtime. Plaintiffs allege that they and other female corrections officer are often passed over for overtime shifts for male officers. This, according to Plaintiffs, results in lower pay for Plaintiffs and other female corrections officers. They do not allege any particular examples. Moreover, these allegations stand in direct opposition to Plaintiffs' claims for racial and gender discrimination, wherein they allege that female corrections officers were often required to work overtime in place of male and/or Latino corrections officer.

### E. Plaintiffs' Claim for Violation of NJDOCS Reporting Policy

The Complaint states that any NSP employee that witnesses an unusual incident at work must document the incident within twenty-four hours in something called a Special Report. Special Reports are sorted by the Shift Commander and then sent to the Administrator's Office.

Plaintiffs allege that Officers McDaniels and Boyd submitted to Adm. Lagana Special Reports detailing the aforementioned behavior of Lt. Daye and that those reports went unaddressed. They also reiterate that their EED complaints that went unaddressed.

Plaintiffs further allege retaliatory conduct against Officer Boyd for complaining about Lt. Daye. Major Paul told her that her Special Reports were causing other corrections officers to not want to work with her. In addition, Officer Boyd was placed on unspecified bad assignments.

F. **Plaintiffs' Claim for Exposure to Hazardous Environment**

Plaintiffs allege that Officer Boyd has often been assigned to operate an x-ray machine used to examine individuals entering NSP without being provided a radiation badge to keep track of her radiation exposure. When she complained about this, she was given someone else's radiation badge, which was of no help accurately monitoring her radiation levels.

Plaintiffs allege a number of other health and environmental issues at NSP, including (1) particles from dirty vents in the Center Control area that Officers McDaniels and Cannon have been exposed to, which aggravates their asthma and has resulted in rash breakouts; (2) bug and rat infestations and the smell of dead animals throughout the prison; and (3) moldy food in the prison dining hall.

G. **Plaintiffs' Claim for Violation of Domestic Policy and Failure to Implement Policies to Address Violence in the Workplace**

Plaintiffs reiterate their allegations surrounding the unfortunate interactions between Officer Boyd and Lt. Daye, and the Municipal Court finding against Lt. Daye. Officer Boyd sent a copy of the Municipal Court finding to NJDOCS's Special Investigations Division, which failed to discipline Lt. Daye in any matter. In addition, the NJDOCS administration failed to discipline Lt. Daye, take away his weapon, or terminate his employment, in violation of NJDOCS policy. Finally, Plaintiffs make general allegations of retaliatory treatment against Officers McDaniels and Cannon, but it is unclear how they relate to this claim.

H. **Plaintiffs' CEPA Claim**

7

Plaintiffs allege that they submitted Special Reports and made verbal complaints of a number of workplace violations, including those related to their aforementioned claims, and that Defendants took retaliatory action. However, they only point to one instance where Officer Boyd complained of a number of violations to a Mr. Farsi. In retaliation, Officer Boyd was "interrogated and videotaped" by the Special Investigations Unit. (Compl. ¶ 133.) In addition, the individuals that Officer Boyd had reported were told that she had reported them, resulting in her being "made to feel like a criminal." (Id.)

**I.     Plaintiffs' Discrimination Claim Based on Military Status Under the NJLAD**

As a member of the United States Military, Officer Boyd is at times called for duty and therefore has to leave her job at NSP temporarily. During these periods, NJDOCS is required to pay Officer Boyd in full for up to ninety days. In June 2012, Officer Boyd provided military leave documents to Lt. Douglas, who failed to forward them on to NJDOCS payroll, resulting in a delay in her receiving full pay.

Plaintiffs also allege that Lt. Graham refused to include Officer Boyd in a CPR training course. It is unclear how this relates to Officer Boyd's military status.

**J.     Failure to Segregate Employee Health Records**

According to the Complaint, NJDOCS is required to maintain two separate files on their employees: one containing employment information, and one containing health information. At an unspecified point, the EEOC inspected NSP and found that employee health information was being comingled with employment information. Plaintiffs allege that this violated an unspecified policy and unspecified privacy laws.

## II. DISCUSSION

Defendants now move to Sever Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 21, and have Officers Boyd, McDaniels, and Cannon file separate lawsuits against Defendants, pursuant to Federal Rule of Civil Procedure 12(e).  In doing so, they argue that the Complaint sets forth a series of vague and unrelated claims that will each require separate evidence and witnesses.

Plaintiffs oppose Defendants' motion, arguing that their claims arise out of a common origin and share common issues of law and fact, and that the Complaint is neither vague nor ambiguous.  In addition, Plaintiffs move to remand all of their claims, except that under the Fair Pay Act, to New Jersey Superior Court, pursuant to 28 U.S.C. § 1441(c).  In doing so, they argue that (1) the Court does not have original or supplemental jurisdiction over their state law claims; and (2) Defendants' removal of this case to this Court was defective because not all Defendants consented to removal.  Defendants oppose the motion to remand, arguing that (1) the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims; and (2) Plaintiffs' request to remand is untimely as it was not filed within thirty days after removal.

**A.     Plaintiffs' Motion to Remand**

Plaintiffs' argument that, under 28 U.S.C. § 1441(c), the Court must remand their state law claims to New Jersey Superior Court is unavailing.  28 U.S.C. § 1441(c) states that if a Complaint that was removed to federal court removed contains claims over which the court cannot exercise original or supplemental jurisdiction, the court must sever those claims and remand them to state court.

Here, the Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

9

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court has original jurisdiction over Plaintiffs' claim under the Fair Pay Act pursuant to 28 U.S.C. § 1331. That claim alleges that Plaintiffs were subject to discrimination at NSP by receiving unequal overtime pay. Plaintiffs' state law claims allege various forms of discrimination and workplace violations at NSP during the same time period. Consequently, the Court can and will exercise supplemental jurisdiction over those claims as they form part of the same case or controversy as Plaintiffs' claim under the Fair Pay Act. Moreover, remanding Plaintiffs' state law claims to New Jersey Superior Court would be inefficient and result in multiple incomprehensible complaints in both state and federal court. See Section B, infra.

Plaintiffs' argument that removal was defective because there is no evidence that Lt. Daye consented to it is also unavailing because the time to assert that argument has expired. "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). Defendants filed their notice of removal in this case on October 19, 2012. Plaintiffs filed their motion to remand on February 19, 2013, many months after the 30-day deadline. Thus, Plaintiffs' Motion to Remand is denied.

B.   **Defendants' Motion to Sever and Have Plaintiffs Individually File a More Definite Statement**

Defendants' contend that, in its current form, many portions of the Complaint are virtually incomprehensible and therefore the Complaint should be severed. This contention identifies the correct problem but the incorrect solution. The Complaint is indeed cumbersome and extraordinarily difficult to follow. It does, however, make clear that Plaintiffs seek damages for various forms of discrimination and workplace violations taking place at NSP that will

invariably involve overlapping evidence.  Perhaps most importantly, requiring Officers Boyd, McDaniels, and Cannon to file individual lawsuits would only result in three incomprehensible Complaints.  Consequently, Defendants' Motion to Sever and have Plaintiffs individually file a more definite statement is denied.

Nonetheless, Plaintiffs' Complaint remains a Rube Goldberg of allegations that utterly fail to comport with federal pleading standards and to which Defendants could not possibly be expected to respond.  Federal Rule of Civil Procedure 8(a) requires that Plaintiffs' Complaint contain "a short and plain statement of the claim showing that the [they are] entitled to relief."  Federal Rule of Civil Procedure Rule 10(b) requires that Plaintiffs "must state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Plaintiffs' Complaint contains neither a short and plain statement of their claims nor numbered paragraphs that are each limited to one idea.  Indeed, there are far too many deficiencies in the Complaint to list.  However, the Court will discuss five for Plaintiffs' benefit.

First, there are many instances where a single numbered paragraph contains an incoherent jumble of ideas to which any litigant would have insurmountable difficulty responding.  For example, Paragraph 41 in support of Plaintiffs' sexual harassment claim under the NJLAD states:

> The circumstances were conveyed by Pittman to Daye who then confronted McDaniels and told her that he needed to speak with her outside of the Center Control location.  He insisted that the conversation take place in the lounge area and McDaniels accompanied Daye to this location.  When McDaniels arrived at this location with Daye, she was confronted by Daye's paramour who was waiting in the lounge.  Pittman moved towards McDaniels in an aggressive manner as if to strike McDaniels.  During this time, Daye told McDaniels that she had to straighten things out with his love interest.  McDaniels felt stressed by this pressure and demands made by Daye.  She felt that he blamed her and as the supervisor, she was concerned that she would be treated unfairly by him. McDaniels complained in a Special Report of this incident and the administration at Northern State Prison never addressed it.  McDaniels [sic] complaint was ignored.

Paragraph 61 in support of Plaintiffs' claim for gender discrimination under the NJLAD states:

> Boyd previously worked the evening shift, but was switched to the night shift to work despite the fact that she had requested to work days. Boyd works the 10:00 P.M. – 6:00 A.M. shift and now reports to Lt. Rodriguez. Boyd has been subject to close scrutiny, placed to work in isolated locations, and been subject to male inmate strip searches despite strip searching of inmates being prohibited in the presence of female officers. When Boyd pointed out to Sgt. Stone that inmates should not be strip searched in the presence of females, the strip searching continued in her location with the inmates being strip searched behind her and in close proximity to her. In those instances, St. Stone made negative, gender discriminatory comments.

Second, Plaintiffs' Complaint contains multiple strings of separately numbered paragraphs that bounce from one idea to another without any logical organization, rendering the specific bases for Plaintiffs' claims virtually indiscernible. For example, in support of their claim for violation of the NJDOCS reporting policy, Plaintiffs allege:

> 93.   McDaniels and Boyd wrote Special Reports about the harassment that they were subjected to by Lt. Daye during the time period of about March 2011 through June 2011. The Special Reports were submitted to Administrator Lagana to be addressed. The concerns that they highlighted in the Special Reports was never addressed by Lagana. In addition, Major Blevins never addressed the concerns.
> 94.   When McDaniels and Boyd filed complaints with the Equal Employment Department, the Equal Employment Department never addressed their concerns and in fact they never received a response to their Equal Employment complaints.
> 95.   Major Blevins was instrumental in creating a hostile work environment for Boyd as he encouraged other employees to act in an adversarial way to Boyd. This treatment became apparent when Boyd in about March 2012 filed a complaint against Sgt. Stone.
> 96.   Major Paul failed to address and file Special Reports submitted to him by Boyd, Major Paul told Boyd that the other Corrections Officers would not work with her because she wrote Special Reports. As a result of this position taken, it was common to place Boyd on isolated assignments. This isolation of Boyd placed Boyd in harm's way.

Third, Plaintiffs allege each of their claims against all eleven Defendants, but fail to set forth specific facts indicating each Defendant's liability for each claim. For example, in alleging their Fair Pay Act/Violation of Local 105 Union Contract claim, Plaintiffs fail to specify how

12

each Defendant, or even a single Defendant, is responsible for their receiving unequal overtime pay. Plaintiffs' claims for exposure to a hazardous environment, discrimination based on military status, and failure to segregate employee health information present the same egregious deficiency. Their other claims also lack specificity regarding each Defendant's liability. Without such specificity Defendants will not know the basis of Plaintiffs' claims against them and remain unable to respond to those claims.

Fourth, Plaintiffs fail to set forth the particular cause of action that gives rise to each of their claims. They set forth various claims under the NJLAD but fail to note the specific statutory provisions that give rise to those claims. They assert violations of various NJDOCS policies, but fail to specify the provisions being violated or the legal mechanism by which they may assert claims for those violations. Defendants must have notice of the specific laws Plaintiffs allege they have violated.

Fifth, the Complaint is riddled with allegations that are too vague to support a plausible claim for relief. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). For example, Plaintiffs allege that "Lt. Daye made sexually suggestive statements and sexual advances at Boyd" (Compl. ¶ 36), but fails to specify the nature or circumstances of those statements and advances. They allege that they "have been subject to scrutiny with regard to their arrival time" to work (Id. ¶ 52), but fail to detail the nature of such scrutiny. They allege that "Major Blevins was instrumental in creating a hostile work environment for Boyd as he encouraged other employees to act in an adversarial way to Boyd (Id. ¶ 95), but fail to set forth the nature of the hostile work environment or adversarial manner. These are just a few of many potential examples.

13

In short, Plaintiffs' Complaint fails to satisfy the federal pleading standards in virtually every conceivable way. Consequently, their Complaint is dismissed. However, the Court will grant leave to Plaintiffs to amend and re-file their Complaint in a manner that comports with the Federal Rules of Civil Procedure.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Sever and require Plaintiffs to individually file more definite statements of their claims is DENIED; Plaintiffs' Motion to Remand is DENIED; and Plaintiffs' Complaint is dismissed without prejudice and with leave to file an Amended Complaint that comports with the Federal Rules of Civil Procedure within thirty (30) days of the date of the order implementing this Opinion.

The New Jersey Department of Corrections is directed to deliver a copy of the Complaint personally to Jeffrey S. Chiesa, Attorney General of New Jersey, and to file with the Court within thirty (30) days of the date of the order implementing this Opinion (with a copy to Plaintiff's attorney) a letter stating the manner in which the Attorney General and State of New Jersey is addressing the general problems at Northern State Prison seemingly evidenced by the Complaint.

The Court will enter an Order implementing this Opinion.


　　　　　　　　　　　　　　　　　　　　　　 _/s/ Dickinson R. Debevoise_____
　　　　　　　　　　　　　　　　　　　　　　 DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  March 18, 2013