NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEISHA BOYD, CHANDAR MCDANIELS,
AME'CHERIE CANNON,

      Plaintiffs,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, ET AL.,

      Defendants.

Civ. No. 12-6612 (DRD)

**O P I N I O N**

*Appearances by:*

LURETHA M. STRIBLING, ESQ.
133 Westfield Avenue, Suite 3
Clark, New Jersey 07066

 *Attorney for Plaintiffs*

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
by: Ryan C. Atkinson, Esq.
R.J. Hughes Justice Complex
25 Market Street
P.O. BOX 112
Trenton, New Jersey 08625

 *Attorneys for Defendants New Jersey Department of Corrections, Gary Lanigan, Paul K. Lagana, Mitchell A. Douglas, Edwin Rodriguez, Darryl A. Morgan, Darryl Coburn, Andre Graham, and Marvin Blevins*

**DEBEVOISE, Senior District Judge**

This matter again arises out of a slew of incoherent allegations of widespread discrimination and general misconduct against female, African American corrections officers working at Northern State Prison ("NSP"). On September 10, 2012 Plaintiff Officers Keisha Boyd, Chandar McDaniels, and Ame'Cherie Cannon filed a Complaint, in New Jersey Superior Court, against Defendants New Jersey Department of Corrections ("NJDOCS"), Gary Lanigan, Administrator Paul Lagana, Lieutenant Darron Daye, Major Marvin Blevins, Major Gregory Paul, Lieutenant Edwin Rodriguez, Lieutenant Darryl Morgan, Lieutenant Darryl Coburn, Lieutenant Asmar Graham, and Lieutenant Mitchell Douglas. The Complaint sets forth counts of sexual harassment, gender discrimination, racial discrimination, and discrimination based on military status under unspecified provisions of the New Jersey Law Against Discrimination ("NJLAD"); violations of unspecified provisions of the Lily Ledbetter Fair Pay Act of 2009, Plaintiffs' Local 105 Union Contract, NJDOCS's Corrections Reporting Policy, Domestic Violence Policy, and unspecified privacy laws; and claims for exposure to a hazardous environment and retaliation under the Conscientious Employee Protection Act ("CEPA"). The Complaint seeks compensatory, consequential, and punitive damages from all Defendants on all claims, as well as attorney's fees and costs.

On October 19, 2012, Defendants removed the Complaint to this Court pursuant to 28 § U.S.C. 1441. Defendants then moved to sever the Complaint and require each Plaintiff to file a more definite statement of her claims. In response, Plaintiffs moved to remand all of their claims to New Jersey Superior Court, except that under the Fair Pay Act.

On March 18, 2013, the Court issued an Opinion and Order denying both motions and ultimately dismissed the Complaint for failure to comply with Federal Rule of Civil Procedure 8(a) and 10(b), without prejudice and with leave to amend. On April 14, 2013, Plaintiffs filed an

Amended Complaint with additional allegations in support of their claims. The Amended Complaint also specifies the Health Insurance Portability and Accountability Act ("HIPAA"), and the Americans with Disabilities Act ("ADA") as the legal vehicles for their privacy claims, and the Public Employees Occupational Safety and Health Act ("PEOSH") as the legal vehicle for their claims for exposure to a hazardous environment.

Defendants NJDOCS, Gary Lanigan, Adm. Lagana, Lt. Douglas, Lt. Rodriguez, Lt. Morgan, Lt. Coburn, Lt. Graham, and Maj. Blevins now move to strike the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(f), or, in the alternative, to dismiss certain claims from the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose the motion. In addition, Plaintiffs move for sanctions against Defendants, pursuant to Federal Rule of Civil Procedure 11(b).

For the reasons set forth below, Plaintiffs' Motion for Sanctions is DENIED. Defendants' Motion to Strike, or in the alternative, Dismiss, will be treated as a Motion to Dismiss the Amended Complaint in its entirety, and is GRANTED.

## I. BACKGROUND

Plaintiffs are employed by NJDOCS as Senior Corrections Officers at Northern State Prison ("NSP"). Their initial Complaint set forth a variety of allegations so disjointed and convoluted that the Court was unable to synthesize them into a coherent background section, and was instead forced to recite Plaintiffs' allegations on a claim-by-claim and piecemeal basis. Unfortunately, the Amended Complaint requires the Court to do the same.

**A.    Plaintiffs' Claim for Sexual Harassment and Hostile Work Environment under the NJLAD**

Plaintiffs allege that Lt. Daye, who, in March 2011, worked at the Shift Commander in Center Control with Plaintiffs, "made sexually suggestive statements and sexual advances

towards Boyd." (Amend Compl. ¶ 54.) He also "started a rumor among the prison staff that he and Boyd were in the park and were caught by law enforcement in a compromising position." (Id. ¶ 57.)

Plaintiffs further allege that Lt. Daye played "sexually suggestive music" in the Center Control and "told all within earshot that the song 'Doing it in the Park' was his theme song." (Id. ¶ 56.) Lt. Daye also "referred to [Boyd] as a stupid bitch" to other officers (Id. ¶ 78), and commented that Officer Cannon "was not too bright." (Id. ¶ 59)

Somehow, Officer Boyd found Lt. Daye's behavior attractive, and the two began to date. As is turns out, however, Lt. Daye was simultaneously in a relationship with another corrections officer, Officer Pitman. Upon discovering this relationship, Officer Boyd ended her romantic relationship with Lt. Daye and had a conversation with Officer Pittman. Apparently, this angered Lt. Daye, who proceeded to tell Officer Boyd that "she had better repair his relationship with Pittman." (Id. ¶ 64.) Lt. Daye also sent Officer Boyd text messages stating that "she had better stay out of his way" or risk being hurt, and "that he would kill one of her associates and would do the same thing to her." (Id. ¶¶ 65-66.)

Consequently, Officer Boyd initiated a lawsuit against Lt. Daye in Newark Municipal Court, which resulted in a finding that Lt. Daye "had engaged in harassment." (Id. ¶ 68.) Apparently, NJDOCS and Administrator Lagana was made aware of this finding but failed to discipline Lt. Daye. Officers Boyd and McDaniels also filed complaints regarding Lt. Daye with Lagana and NJDOCS's Equal Employment Department ("EED"), although those complaints were never investigated.

**B.      Plaintiffs' Claim for Gender Discrimination under the NJLAD**

4

Plaintiffs allege that they are penalized by Adm. Lagana, Lt. Morgan, and Maj. Blevins for arriving to work late while male corrections officers are not. They note that Lt. Rodriguez fails to discipline male officers who work under him that report to work late. They note no specific examples.

Plaintiffs also allege that they are required to work overtime while male officers are not. Plaintiffs point to an episode in May 2012 where Officer Cannon was required to work overtime instead of male corrections officers that were listed ahead of her on the mandatory overtime list. When she refused, stating that she felt ill, she was disciplined by Sgt. Coburn.

Plaintiffs further allege that female corrections officers were provided with inferior shifts. For example, in June and July 2011, Officer Boyd submitted a request to one or more unspecified individuals to work the day shift instead of the evening shift. Her request was denied, while similar requests from other male corrections officers were granted. She was instead transferred to the night shift.

Other requests were also apparently denied. Plaintiffs point to an episode, in March 2012, where Officer Cannon had just returned from disability leave with a doctor's note requesting that she only do light work. This request was denied by one or more unspecified individuals, while a similar request by a male correction officer, Officer Natale, was granted.

Plaintiffs allege that Officer Boyd was inappropriately made to witness strip searches of male inmates in violation of prison policy. When she complained about this, Sgt. Stone made unspecified discriminatory comments. Sgt. Stone has on other occasions told Officer Boyd that female corrections officers complain too much and should only work at facilities that house female prisoners.

Finally, Plaintiffs point to an episode that occurred on May 2, 2012, where Lt. Morgan told Officers McDaniels and Cannon that they were referred to as "The Haters." Plaintiffs suggest that Lt. Morgan encouraged other corrections officers to use that term. In addition, Officer McDaniels has been labeled by unspecified individuals as a member of the "Bitter Bitch Crew."

**C.     Allegations of Racial Discrimination under the NJLAD**

Plaintiffs contend that white and Latina corrections officers are treated better than African American corrections officers. Plaintiffs allege that Officer Cannon was required to work overtime even though other Latina corrections officers were ahead of her on the mandatory overtime list. Upon refusing to work overtime, Officer Cannon received discipline from Sgt. Coburn. However, Sgt. Coburn did not discipline Latina corrections officers who similarly refused to work overtime.

Plaintiffs then set forth the following examples of unequal treatment: (1) Latina officers were offered training opportunities that were never offered to Plaintiffs, even on request; (2) Officer Boyd complained to Sgt. Stone that another corrections officer (who was Latina) had covered up the windows to inmates' cells—a violation of prison policy—but she was never disciplined for doing so; (3) Officers McDaniels and Boyd wrote up unspecified reports of workplace violations that were never addressed, while such reports were addressed when submitted by a female Latina corrections officer; (4) Latino male corrections officers freely converse in Spanish in violation of work place policy to only communicate in English; (5) Lt. Rodriguez chose a Latina corrections officer to work under him in Center Control instead of Officer Boyd, even though she was more qualified for the position; and (6) "male supervisory

personnel" apparently announced "that they prefer female, Latina Corrections Officers over African-American female Corrections Officers." (Amend. Compl. ¶ 158.)

**D.      Plaintiffs' Claim for Violation of the Lilly Ledbetter Act and Local 105 Union Contract**

Pursuant to their Local 105 Union Contract, corrections officers at NSP are required to work mandatory overtime. Plaintiffs allege that they and other female corrections officer are often passed over for overtime shifts that are instead given to male officers.[1] This, according to Plaintiffs, results in lower pay for Plaintiffs and other female corrections officers. They do not set forth any particular examples. Moreover, these allegations yet again stand in direct opposition to Plaintiffs' claims for racial and gender discrimination, wherein they allege that they were often required to work overtime in place of male and/or Latina corrections officer.

**E.      Plaintiffs' Claim for Violation of NJDOCS Reporting Policy**

The Amended Complaint states that any NSP employee that witnesses an unusual incident at work must document the incident within twenty-four hours in something called a Special Report. Special Reports are sorted by the Shift Commander and then sent to the Administrator's Office.

Plaintiffs allege that Officers McDaniels and Boyd submitted to Adm. Lagana Special Reports detailing the aforementioned behavior of Lt. Daye and that those reports went unaddressed. Apparently, Major Blevins was also obligated to address the concerns set forth in the reports submitted by Plaintiffs but failed to do so. Plaintiffs also reiterate that their EED complaints that went unaddressed.

Plaintiffs further allege the following retaliatory conduct against Officer Boyd for complaining about Lt. Daye: (1) Maj. Paul told Officer Boyd that her Special Reports were

---

[1] In addition, Plaintiffs allege that Officer McDaniels was not reimbursed for being held over at one or more shifts.

causing other corrections officers to not want to work with her; (2) Officer Boyd was placed on unspecified bad assignments; (3) Maj. Blevins informed others of Officer Boyd's complaint and encouraged other officers to be hostile toward her; and (4) the contents of Officer Boyd's Complaint against Sgt. Stone were divulged to him, resulting in retaliation.

F.     **Plaintiffs' Claim for Exposure to Hazardous Environment**

Plaintiffs allege that Officer Boyd has often been assigned to operate an x-ray machine used to examine individuals entering NSP without being provided a radiation badge to keep track of her radiation exposure. When she complained about this, she was given someone else's radiation badge, which was of no help in accurately monitoring her radiation levels.

Plaintiffs allege a number of other health and environmental issues at NSP, including (1) particles from dirty vents in the Center Control area that Officers McDaniels and Cannon have been exposed to, which aggravates their asthma and has resulted in rash breakouts; (2) bug and rat infestations, resulting in severe bug bites; (3) the smell of dead animals throughout the prison; and (4) moldy food in the prison dining hall.

G.     **Plaintiffs' Claim for Violation of Domestic Policy and Failure to Implement Policies to Address Violence in the Workplace**

Plaintiffs reiterate their allegations surrounding the bizarre and unfortunate interactions between Officer Boyd and Lt. Daye, and the Municipal Court finding against Lt. Daye. Officer Boyd sent a copy of the Municipal Court finding to NJDOCS's Special Investigations Division, which failed to discipline Lt. Daye in any manner. The NJDOCS administration also failed to discipline Lt. Daye, take away his weapon, or terminate his employment, which, according to Plaintiffs is a violation of NJDOCS policy. Finally, Plaintiffs make unspecified allegations of retaliatory treatment against them.

H.     **Plaintiffs' CEPA Claim**

Plaintiffs allege that they submitted Special Reports and made verbal complaints of a number of workplace violations, including those related to their aforementioned claims, and that Defendants took retaliatory action against them in the form of "ignoring Plaintiffs['] concerns to placing Plaintiffs in harm's way by telling other Corrections Officers that Plaintiffs had complained about them." (Amend Compl. ¶ 324.) Officer Boyd complained of a number of violations to a Mr. Farsi, Lt. Graham, and Lt. Douglas. In retaliation, Officer Boyd was "interrogated and videotaped" by the Special Investigations Unit. (Id. ¶ 307.) In addition, the individuals that Officer Boyd had reported were told that she had reported them, resulting in her being "treated like a criminal." (Id. ¶ 310.)

### J. Violation of HIPAA and the ADA

According to the Amended Complaint, NJDOCS is required to maintain two separate files on their employees: one containing employment information, and one containing health information. Plaintiffs allege that NJDOCS commingled their respective personnel and health files. At an unspecified point, the EEOC inspected NSP and found that employee health information was being comingled with employment information and notified NJDOCS that this was illegal.

### I. Plaintiffs' Discrimination Claim Based on Military Status Under the NJLAD

As a member of the United States Military, Officer Boyd is at times called for duty and therefore has to leave her job at NSP temporarily. During these periods, NJDOCS is required to pay Officer Boyd in full for up to ninety days. In June 2012, Officer Boyd provided military leave documents to Lt. Douglas, who failed to forward them on to NJDOCS payroll, resulting in a delay in her receiving full pay.

Plaintiffs also allege that Lt. Graham refused to include Officer Boyd in a CPR training course. It is unclear how this relates to Officer Boyd's military status.

## II. DISCUSSION

Defendants now move to strike Plaintiffs' Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(f), or, in the alternative, to dismiss several counts of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] In doing so, they argue, among other things that (1) the Amended Complaint fails to comply with the Court's March 18, 2013 Opinion and Order; (2) there is no private right of action under PEOSH; (3) Plaintiffs fail to show any violation of the Prevention of Domestic Violence Act; and (4) HIPAA does not permit a private right of action.

Plaintiffs oppose Defendants' motion, arguing, among other things, that the Amended Complaint (1) complies with the Court's prior Opinion and Order; (2) states a claim under tort law for exposure to a hazardous work environment; (3) shows a violation of the Prevention of Domestic Violence Act; (4) sets forth violations of several NJDOCS policies; and (5) states a claim under the ADA for violations of privacy policies.

Plaintiffs also move for sanctions against Defendants for its Motion against the Amended Complaint, contending that Defendants' current motion serves only to unreasonably delay this litigation.

### A.  Defendants' Motion

---

[2] A Motion to Strike is generally aimed at one or more portions of a Complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) ("When a complaint fails to comply with" Federal Rule of Civil Procedure 8, "the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial." (citation omitted)). Thus, the Court will treat Defendants' Motion to strike the entire Amended Complaint for failure to comply with the Court's March 18, 2013 Opinion and Order and Federal Rule of Civil Procedure 8, as one to dismiss, instead of one to strike.

In its March 18, 2013 Opinion, the Court discussed five ways in which the Complaint failed to comply with the Federal Rules of Civil Procedure. First, the Court noted instances where a single numbered paragraph contained an incoherent jumble of ideas. Second, the Court identified separately numbered paragraphs that bounced from one idea to another without any logical organization. Third, the Court noted that Plaintiffs alleged each of their claims against all eleven Defendants, but failed to set forth specific facts indicating each Defendant's liability for each claim. Fourth, the Court pointed out that Plaintiffs failed to set forth the particular cause of action that give rise to each of their claims. Finally, the Court stressed that the Complaint was riddled with allegations that were too vague to support a plausible claim for relief under the pleading standard set forth in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

The Amended Complaint cures only the first deficiency. Thus, while each numbered paragraph in the Amended Complaint now contains a single idea, in accordance with Rule 10(b), the sum of those numbered paragraphs is still sorely lacking in coherence and logical organization, in violation of Rule 8(a). Indeed, as with the initial Complaint, the Amended Complaint is a scattershot of allegations that are, in the aggregate, virtually inscrutable.

In addition, the Amended Complaint still holds all eleven Defendants liable on all claims, without pleading specific facts indicating each Defendant's liability for each claim, and fails to point to the specific legal provisions giving rise to each of their claims. Finally, the Amended Complaint remains brimming with vague, redundant, and conclusory allegations that cannot support one or more claims for relief.

In short, Plaintiffs again fail to satisfy the federal pleading standards in a host of ways. Consequently, the Amended Complaint is dismissed, this time with prejudice, as Plaintiffs have

11

shown that they are simply incapable of filing a pleading that comports with the Federal Rules of Civil Procedure, despite specific guidance. Defendants' Motion to Strike, which will be treated as a Motion to Dismiss, is GRANTED.

**B.      Plaintiffs' Motion for Sanctions**

Plaintiffs' Motion for Sanctions is truly baffling and further exhibits their failure to understand the Federal Rules of Civil Procedure. Just as Defendants had every right under the Federal Rules of Civil Procedure to move in response to Plaintiffs' initial Complaint, Defendants have every right under the rules to move in response to the Amended Complaint. Consequently, Plaintiffs' Motion for Sanctions is DENIED.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike the Amended Complaint in its entirety, or, in the alternative, to dismiss certain claims from the Amended Complaint, which will be treated as a Motion to Dismiss the Amended Complaint in its entirety, is GRANTED. Plaintiffs' Motion for Sanctions is DENIED. The Amended Complaint is dismissed in its entirety with prejudice.

      **/s/ Dickinson R. Debevoise**
      DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  September 9, 2013